IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

Kinsale Insurance Company,

Plaintiff,

v.

Town Center Inn LLC d/b/a Quality Inn; Choice Hotels International, Inc.; and John Washington and Robin Washington, as Personal Representatives of the Estate of JaQuavious Washington,

Defendants.

**COMPLAINT**
**FOR DECLARATORY JUDGMENT**
**(NON-JURY)**

9:26-cv-4083-RMG

Kinsale Insurance Company ("Kinsale") brings this declaratory action against Town Center Inn LLC d/b/a Quality Inn ("Town Center Inn"), Choice Hotels International, Inc. ("Choice Hotels"), and John Washington and Robin Washington as Personal Representatives of the Estate of JaQuavious Washington, and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201. At issue is whether Kinsale's primary and excess insurance policies provide coverage for a lawsuit arising from gunshot injuries JaQuavious Washington ("Decedent") sustained and from which he later died while at or around Town Center Inn at 2001 Boundary Street in Beaufort, South Carolina. Kinsale seeks an Order of this Court that the following endorsements exclude or limit coverage: (i) Exclusion – Assault and Battery ("CGL Policy Assault and Battery Exclusion"); (ii) Exclusion – Assault, Battery, Abuse, or Molestation ("Excess Policy Assault and Battery Exclusion"); (iii) Absolute Exclusion – Firearms ("Firearms Exclusion"); (iv) Additional Insured as Required by Written Contract; and that Kinsale has no duty to defend or indemnify Town Center Inn or Choice

Hotels for the Underlying Lawsuit.

**JURISDICTION AND VENUE**

2. Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. As to the amount in controversy, the Washington Defendants contend that Decedent suffered multiple gunshot wounds as a result of alleged dangerous conditions, which caused him to suffer tremendously and caused his death. They seek actual and consequential damages, including medical expenses, funeral expenses, pain and suffering, loss of enjoyment of life, loss of companionship, support, and mental anguish, as well as punitive damages. They have issued settlement demands to Town Center Inn and Choice Hotels which exceed $75,000, and the Kinsale policies at issue have limits of coverage of more than $75,000.

4. Venue is proper in this district because the policy affords coverage in connection with the property located in this district, the underlying lawsuit in the Beaufort County Court of Common Pleas, and a substantial part of the events giving rise to the claim occurred in this district. *See* 28 U.S.C. § 1391(b)(2).

5. All conditions precedent to this action occurred, were performed, or are waived.

**THE PARTIES**

6. Kinsale is a corporation, organized and existing under the laws of the State of Arkansas, with its principal place of business in the Commonwealth of Virginia.

7. Town Center Inn is a South Carolina limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in Beaufort, South Carolina. As set forth more fully in the Declaration of Counsel attached as **Exhibit A** and incorporated herein by reference, on information and belief, Town Center Inn's only

member is Richard H. Stewart, who is domiciled in, and a citizen of, South Carolina. Alternatively, the other possible members of Town Center Inn LLC and its possible parent entity, 303 Associates, LLC, a Georgia limited liability company, are also domiciled in and citizens of South Carolina.

8. Choice Hotels International, Inc. is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland.

9. Choice Hotels is named as a defendant in the underlying lawsuit and seeks coverage under the policies that Town Center Inn purchased from Kinsale. Choice Hotels has tendered its defense and indemnity to Kinsale as an Additional Insured under the Kinsale policies pursuant to a franchise agreement between Choice Hotels and Town Center Inn. A copy of the agreement is attached hereto as **Exhibit B**.

10. The Decedent, JaQuavious Washington, was, at the time of the incident and his death, was domiciled in, and a citizen of, South Carolina.

11. John Washington and Robin Washington are the Personal Representatives of the Estate of Decedent and are deemed to be citizens of the same State as the decedent. 28 U.S.C. § 1332(c)(2).

**UNDERLYING LAWSUIT**

12. On February 3, 2026, Plaintiffs, as Personal Representatives of the Estate of JaQuavious Washington, deceased, filed a Summons and Complaint (the “Complaint”) against Town Center Inn, Choice Hotels, Tiana Parker, and Trevaughn Eugene Hipp in the Beaufort County, South Carolina, Court of Common Pleas, case no. 2026CP0700295 (the "Underlying Lawsuit"). A copy of the Complaint is attached hereto as **Exhibit C**.

13. The Underlying Lawsuit stems from gunshot injuries which Plaintiffs allege Decedent sustained on June 10, 2023, outside Town Center Inn. Decedent succumbed to his

injuries.

14. The Complaint alleges that on June 10, 2023, Tiana Parker hosted a large alcohol-fueled birthday party at the Town Center Inn. Complaint, at ¶ 24.

15. According to the Complaint, Decedent was a business invitee lawfully on the premises of Town Center Inn during Ms. Parker's birthday event, which became increasingly disorderly, loud, and unsafe. *Id.*, at ¶¶ 26 & 31. During the event, "Trevaughn Eugene Hipp threatened several times throughout the event to shoot [Decedent]." *Id.*, at ¶ 32.

16. The Complaint alleges "At or about 11:13 P.M., Trevaughn Eugene Hipp came out of the [Town Center Inn] with a firearm and shot [Decedent] multiple times killing him." *Id.*, at ¶ 33.

17. The Complaint alleges that the Town Center Inn is located in a known high crime area, and according to Beaufort County and City of Beaufort police reports, there had been a prior shooting at the Town Center Inn, as well as other serious criminal activity, including drugs/narcotics, weapons violations, larceny/theft of motor vehicles, larceny/theft of building, burglary, assault, drunkenness, and fighting. *Id.*, at ¶¶ 24 & 27.

18. The Complaint alleges Town Center Inn and Choice Hotels "knew or should have known that Town Center Inn was located in a high crime area; (b) Large alcohol-fueled events pose a heightened and foreseeable risk of violence; and (c) Failure to require adequate security measures in a high crime area at an alcohol-fueled party creates unreasonable foreseeable risk to hotel guests and invitees." *Id.*, at ¶¶ 22 & 28.

19. The Complaint also alleges "[Choice Hotels] promulgated or approved policies allowing franchised hotels to host large banquet events while failing to require adequate security protocols commensurate with known risks." *Id.*, at ¶ 23.

20. The Complaint alleges "[Town Center Inn] expressly reserved the right to monitor events and to terminate or disband gatherings that threatened safety" by way of the banquet hall rental agreement for the birthday event. *Id.*, at ¶ 29.

21. The Complaint then alleges that "Despite this knowledge and authority, [Town Center Inn and Choice Hotels] failed to take reasonable steps to prevent escalation or protect hotel guests." *Id.*, at ¶ 30.

22. The Complaint alleges that Town Center Inn "owed [Decedent] a duty to exercise reasonable care to maintain safe premises and to protect him from foreseeable harm, including foreseeable criminal acts of third parties." *Id.*, at ¶ 37.

23. The Complaint alleges that Town Center Inn "breached that duty by:

a. Allowing an unruly, alcohol-fueled event to continue unchecked;

b. Failing to provide adequate security;

c. Failing to enforce hotel policies on safety, security, and use of the premises;

d. Failing to monitor, intervene, disassemble, shut down, and/or cancel the event; [and]

e. Failing to protect lawful guests from escalating danger."

*Id.*, at ¶ 38.

24. The Complaint alleges "[Town Center Inn] knew or should have known of prior criminal activity and the increased risk associated with the event." *Id.*, at ¶ 42. However, "[Town Center Inn] failed to implement reasonable security measures appropriate for the circumstances." *Id.*, at ¶ 43.

25. The Complaint alleges "[Choice Hotels] exercised control over hotel operations through mandatory brand standards, training requirements, safety protocols, inspections, and enforcement rights." *Id.*, at ¶ 46.

26. The Complaint further alleges "Choice Hotels owed a duty of reasonable care to hotel guests, including [Decedent], arising from its retained control over safety-related operational standards at franchised properties and knew or should have known that failure to enforce adequate security standards at franchised properties created unreasonable risks to guests." *Id.*, at ¶ 47.

27. The Complaint alleges that "Choice Hotels breached its duty by:

a. Failing to require or enforce adequate security measures;

b. Failing to ensure compliance with safety and security policies;

c. Allowing dangerous conditions to persist at a known high-crime location;

d. Failing to require and monitor training on safety and security; and

e. Prioritizing brand uniformity and revenue over guest safety and security.

*Id.*, at ¶ 48.

28. Next, the Complaint alleges "[Choice Hotels] undertook to establish and enforce safety, security, and operational standards" for its properties, and having undertaken that responsibility, "Choice Hotels owed a duty to exercise reasonable care doing so." *Id.*, at ¶¶ 52-53.

29. The Complaint alleges "[Choice Hotels] negligently performed this duty by failing to require or enforce adequate security standards" and as a result, "[Decedent] was foreseeably harmed". *Id.*, at ¶¶ 54-55.

30. The Complaint alleges "[Town Center Inn] acted as the actual or apparent agent of [Choice Hotels]" as evidenced by Choice Hotels holding Town Center Inn "out to the public as part of its national brand." *Id.*, at ¶¶ 57-58. Further, "[Decedent] reasonably relied upon the reputation and safety standards associated with the Choice Hotels brand." *Id.*, at ¶ 59.

31. Kinsale is defending Town Center Inn and Choice Hotels pursuant to a reservation of rights.

## FACTUAL BACKGROUND

32. Town Center Inn purchased a commercial general liability Policy No. 0100237417-0 from Kinsale, effective April 29, 2023, to April 29, 2024 (the "CGL Policy"). A copy of the CGL Policy, with the premiums redacted, is attached as **Exhibit D**.

33. Town Center Inn also purchased a commercial excess liability Policy No. 0100237567-0 from Kinsale, effective April 29, 2023, to April 29, 2024 (the "Excess Policy"). The Excess Policy follows the terms of the CGL Policy and is also subject to its own exclusions. A copy of the Excess Policy, with the premiums redacted, is attached as **Exhibit E**.

34. The CGL Policy contains an Assault and Battery Exclusion endorsement, Form CAS3002 1016, which provides, in pertinent part:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **EXCLUSION – ASSAULT AND BATTERY**
>
> **This endorsement modifies insurance provided under the following:**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE**
>
> The following exclusion is added to this Policy:
>
> > This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked. This exclusion includes but is not limited to:
> >
> > 1. The prevention or suppression, or failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;
> > 2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;
> > 3. The selling, services or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;

4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;
5. The reporting or failing to report to the proper authorities;
6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;
7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;
8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or
9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

The exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or "suit" regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed, concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

For the purposes of this endorsement, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, item **a. Expected or Intended Injury** is deleted and replaced with the following:

"Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

35. The Excess Policy also contains an Assault and Battery Exclusion endorsement, Form CAX3178 0322. It provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**EXCLUSION – ASSAULT, BATTERY, ABUSE, OR MOLESTATION**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or suit for bodily injury or property damage, or any other injury or damage, arising out of, related to, or in any way involving any actual or alleged assault, battery, abuse, or molestation. Assault, battery, abuse, or molestation includes, but is not limited to, any conduct, physical act, gesture, sexual contact (whether or not consensual), sexual molestation, sexual or physical assault or battery, sexual abuse, sexual harassment or exploitation, harmful, unwanted or offensive contact, or spoken or written words of a sexual or physically violent nature, whether provoked or unprovoked.

This exclusion includes but is not limited to:

a. The prevention or suppression of, or the failure to suppress or prevent any assault, battery, abuse, or molestation;
b. The failure to provide an environment safe from any assault, battery, abuse or molestation, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, abuse, or molestation;
c. The selling, servicing, or furnishing of alcoholic beverages resulting in any assault, battery, abuse, or molestation;
d. The reporting or failing to report to the proper authorities;
e. Conducting or failing to conduct an investigation of any assault, battery, abuse or molestation;
f. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;
g. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been any assault, battery, abuse or molestation;
h. Any assault, battery, abuse, or molestation, whether caused by, or at the instigation, instruction, direction, or due to the negligence of the insured, the insured's employees, agents, patrons, customers, or any other person arising from any cause whatsoever; or
i. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items a. through h. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or suit regardless of whether assault, battery, abuse, or molestation is the initial precipitating cause or is in any

way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged bodily injury or property damage, or any other injury or damage, arises out of a chain of events that includes any assault, battery, abuse, or molestation.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

36. The CGL Policy contains an endorsement, **ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT**, which provides, in part:

**A. SECTION II - WHO IS AN INSURED** is amended to include any person or organization you are required to include as an Additional Insured on this Policy by written contract in effect during the policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage", but only for the vicarious liability imposed on the Additional Insured provided that such liability is caused by the sole negligent conduct of the Named Insured and is proximately caused by "your work" or "your product" for the Additional Insured.

37. The Excess Policy also contains a Firearms Exclusion endorsement, Form CAX3162 1121, which provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ABSOLUTE EXCLUSION – FIREARMS**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or suit arising directly or indirectly out of, related to, or in any way involving the use of any firearm.

This exclusion applies to any claim or suit regardless of whether the use of a firearm is the initial precipitating cause or is in any way a cause of bodily injury, property damage, personal and advertising injury or any other injury or damage and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged bodily injury, property damage, personal and

advertising injury or other injury or damage, arises out of a chain of events that involves or includes the use of a firearm at any point.

This exclusion applies regardless of intent and regardless of the particular cause of action asserted including, but not limited to, negligence or other wrongdoing in:

1. The prevention or suppression, or failure to prevent or suppress, any such act or incident;
2. The insured's actual or alleged negligent employment, supervision, hiring, training, or retention of any employee, independent contractor, or any other person or organization;
3. Reporting or failure to report to the proper authorities any act or incident involving the use of a firearm;
4. Conducting or failing to conduct an investigation or background check; or
5. Providing or failing to provide first aid or medical treatment for any injury arising out of the use of a firearm.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

38. Each Policy contains a Duty to Defend Exclusion which provides:

* * *

**DUTY TO DEFEND EXCLUSION**

Where there is no coverage under this Policy, there is no duty to defend.

* * *

**COUNT I – NO COVERAGE UNDER THE CGL POLICY BASED UPON THE ASSAULT AND BATTERY EXCLUSION**

39. Kinsale incorporates by reference the allegations contained in Paragraphs 1 through 38 as though fully set forth herein.

40. The CGL Policy's Assault and Battery Exclusion endorsement excludes coverage for, in part, any assault and battery arising from the negligence of the insured, the insured's employees, agents, patrons, customers, or any other person arising from any causes whatsoever.

41. The claims in the Complaint all arise directly or indirectly out of, are related to, or involve a shooting—an assault and battery and "harmful or offensive contact".

42. Accordingly, Kinsale has no duty to defend or indemnify Town Center Inn or Choice Hotels against the Underlying Lawsuit based on the CGL Policy's Assault and Battery Exclusion and the Duty to Defend Exclusion.

**COUNT II – NO COVERAGE UNDER THE EXCESS POLICY BASED UPON THE ASSAULT AND BATTERY EXCLUSION**

43. Kinsale incorporates by reference the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

44. The Excess Policy follows the terms, definitions, conditions and exclusions of the CGL Policy–the "primary insurance"-subject always to the terms of the Excess Policy. The coverage afforded by the Excess Policy is never broader than the coverage afforded by the CGL Policy.

45. Because the CGL Policy's Assault and Battery Exclusion excludes coverage, the Excess Policy does not provide coverage.

46. In addition, the Excess Policy's Assault, Battery, Abuse, or Molestation Exclusion excludes coverage for, in part, any assault and battery arising from the negligence of the insured, the insured's employees, agents, patrons, customers, or any other person arising from any causes whatsoever.

47. The claims in the Complaint arise directly or indirectly out of, are related to, or involve a shooting—an assault and battery and "harmful or offensive contact" and are thus excluded by the Assault, Battery, Abuse, or Molestation exclusion and Duty to Defend exclusion.

48. Accordingly, Kinsale has no duty under the Excess Policy to defend or indemnify Town Center Inn or Choice Hotels against the Underlying Lawsuit.

**COUNT III – NO COVERAGE UNDER THE EXCESS POLICY BASED UPON THE FIREARMS EXCLUSION**

49. Kinsale incorporates by reference the allegations contained in Paragraphs 1 through 48 as though fully set forth herein.

50. The Excess Policy's Firearms Exclusion endorsement excludes coverage for any claim or suit arising out of, related to, or in any way involving the use of any firearm.

51. The claims in the Complaint arise directly or indirectly out of, are related to, or involve a firearm.

52. Accordingly, Kinsale has no duty under the Excess Policy to defend or indemnify Town Center Inn or Choice Hotels in the Underlying Lawsuit based on the Excess Policy's Firearm Exclusion and the Duty to Defend Exclusion.

**COUNT IV – IN THE ALTERNATIVE, AND ONLY IF COVERAGE IS FOUND, COVERAGE FOR CHOICE HOTELS IS LIMITED TO VICARIOUS LIABILITY**

53. Kinsale incorporates by reference the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

54. Even if coverage was available to Choice Hotels, which is denied, the only coverage available would be for vicarious liability imposed on Choice Hotels resulting from Town Center Inn's sole negligent conduct. There is no coverage for any action or inaction by Choice Hotels.

**PRAYER FOR RELIEF**

Kinsale respectfully requests this Court:

a. Declare that Town Center Inn and Choice Hotels are not entitled to coverage for the Underlying Lawsuit under the CGL Policy because that policy's Assault and Battery Exclusion applies to bar coverage.

b. Declare that Town Center Inn and Choice Hotels are not entitled to coverage for the Underlying Lawsuit under the Excess Policy because coverage is excluded by the CGL

Policy's Assault and Battery Exclusion, by the Assault, Battery, Abuse, or Molestation Exclusion, and by the Absolute Exclusion - Firearms;

c. Declare that Kinsale is relieved of any obligation to continue defending Town Center Inn and Choice Hotels for the claims asserted against them in the Complaint filed in the Underlying Lawsuit and may therefore withdraw its defense; and

d. Declare that, if any coverage is available for Choice Hotels, such coverage is limited to vicarious liability, and not for those causes of action asserting negligence on the part of Choice Hotels.

e. Award Kinsale all costs it incurred to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: *s/Peter H. Dworjnyn*
Peter H. Dworjanyn
Federal Bar No. 6289
1901 Main Street
18th Floor – 3031
Columbia, SC 29201
pdworjanyn@teaguecampbell.com
*Attorney for Plaintiff Kinsale Insurance Company*